UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW D. HORN,<br><br>            Petitioner,<br><br>         v.<br><br>BERNIE ELLIS, Warden, Taft<br>Correctional Institution,<br><br>          Respondent. | 1:06-CV-0006 OWW TAG<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br>**(28 U.S.C. § 2241)** |

## I.  INTRODUCTION

Petitioner Matthew D. Horn (Horn) petitions for writ of habeas corpus.  Respondent Bernie Ellis (Respondent) opposes the petition.

## II.  PROCEDURAL HISTORY

The petition was filed as case number CV-05-0405-EFS in the Eastern District of Washington on December 14, 2005, and was transferred to the Eastern District of California where venue is proper, on January 3, 2006.  Doc. 1, Pet.  The response was filed on April 14, 2006.  Doc. 11, Resp.

## III.  FACTS

This dispute centers on Petitioner's entitlement to early

1

release to a CCC under applicable BOP regulations.  On February
17, 2005, Horn was convicted of four drug offenses, in violation
of Title 21, Sections 841(A)(1), 846, 952(A), and 963, of the
United States Code, in the Federal District Court for the Eastern
District of Washington.  He was sentenced to eighteen months of
imprisonment.  Doc. 11, Resp., 3.  The sentencing judge
recommended that Horn "be given the full benefit of [the Federal
Bureau of Prisons'] pre-release program."  Doc. 1, Pet., Ex. A,
3.  He was committed to the custody of the Federal Bureau of
Prisons (BOP) on March 25, 2005.  Id.

      Horn is currently incarcerated at the Federal Prison Camp at
the Taft Correctional Institution (TCI) in Taft, California, with
a projected release date of July 11, 2006.  Doc. 1, Pet., 2.
Horn has been granted a forty-three-day placement in a CCC, to
begin on May 30, 2006.  Doc. 11, Resp., 4.  Horn alleges that the
BOP is wrongfully denying him consideration for placement into a
community corrections center (CCC) for the last six months of his
eighteen-month sentence.  Doc. 1, Pet., 2.

      Title 18, Section 3621(b), of the United States Code grants
the BOP discretion to designate a prisoner's place of
incarceration in "any available penal or correctional facility
that meets minimum standards of health and habitability[.]"  On
March 25, 1992, the Department of Justice's Office of Legal
Counsel ("OLC") issued an opinion that interpreted Section
3621(b) to allow the BOP unlimited authority to place prisoners
in any appropriate facility for incarceration, including those
operated by the private sector.  16 Op. Off. Legal Counsel 65, 67
(1992).

**2**

1    On December 13, 2002, however, the OLC changed its
2    interpretation of Section 3621(b).  Op. Off. Legal Counsel, slip.
3    op., 2002 WL 31940146 (December 13, 2002).  The OLC determined
4    first that Section 5C1.1 of the United States Sentencing
5    Guidelines did not permit the BOP to substitute confinement in a
6    CCC for a minimum term of imprisonment imposed under that
7    guideline.  The OLC also concluded that Section 3621(b) does not
8    give the BOP general authority to place an offender in community
9    confinement from the outset of his sentence or to transfer the
10   offender from prison to community confinement at any time the BOP
11   chooses during the course of the offender's sentence.  Instead,
12   under the new interpretation of Section 3621(b), front-end
13   placements are not authorized and back-end offenders are only
14   eligible for confinement in CCCs for the lesser of (i) ten
15   percent of their sentence or (ii) six months-periods specifically
16   authorized by Title 18, Section 3624(c), of the United States
17   Code.  The OLC reasoned that, while Section 3621(b) gave the BOP
18   the discretion to choose an inmate's place of imprisonment
19   generally, a CCC did not constitute a place of imprisonment for
20   purposes of that section.  Op. Off. Legal Counsel, 2002 WL
21   31940146 (December 13, 2002).  Instead, the OLC determined that
22   the authority to transfer a prisoner to a CCC came solely from
23   Section 3624(c), which limits the time a prisoner may spend in a
24   CCC to "a reasonable part, not to exceed six months, of the last
25   10 per centum of the term."  *Id.*

26   Shortly after the 2002 OLC opinion was issued, a memorandum
27   written by Deputy Attorney General Larry Thompson instructed the
28   BOP to transfer all offenders residing in CCCs with more than 150

**3**

1    days remaining on their sentence to a traditional prison facility

2    because the use of CCCs was "unlawful."  Memorandum of Deputy

3    Attorney General Larry D. Thompson, December 16, 2002, at 1.  The

4    operative language of the Thompson memorandum is as follows:

5    OLC has now issued a formal opinion finding that BOP's policy is

6    unlawful.  Accordingly, BOP immediately should take all steps

7    necessary to ensure that its sentencing placement decisions are

8    in full compliance with the governing law.  In addition, BOP

9    should transfer to an actual prison facility all federal

10   offenders currently residing in a CCC who, as of today, have more

11   than 150 days remaining on the imprisonment component of their

12   sentence.  BOP shall give at least 30 days written notice to each

13   such offender prior to the transfer.

14   *Id.*

15       The Thompson memorandum proceeded to describe the

16   conclusions of the OLC memorandum.  *Id.* at 1-2.  The Thompson

17   memorandum concluded by explaining that a concern regarding the

18   BOP's previous CCC placement policy was its "potentially

19   disproportionate, and inappropriately favorable, impact on so-

20   called 'white-collar' criminals."  *Id.* at 2-3.  On December 20,

21   2000 the Director of the BOP issued a memorandum to all federal

22   judges stating that the BOP would no longer honor judicial

23   recommendations to place inmates in CCCs for the imprisonment

24   portions of their sentences.  Memorandum of BOP Director Kathleen

25   Hawk Sawyer, December 20, 2002, at 1.  "Effective immediately,

26   this practice will no longer be followed.  The Bureau will not

27   use CCCs as a substitute for imprisonment."  *Id.*  The memorandum

28   explained briefly:

**4**

1    This procedure change follows recent guidance from the

2    U.S. Department of Justice's Office of Legal Counsel

3    (OLC), finding that the term "community confinement" is

4    not synonymous with "imprisonment."  OLC has determined

5    that the Bureau's practice of using CCCs as a

6    substitute for imprisonment contravenes well-

7    established caselaw, and is inconsistent with [Section

8    5C1.1 of the United States Sentencing Guidelines].

9    *Id.*

10  *Dismas Charities, Inc. v. United States Dept. of Justice*, 401

11  F.3d 666, 670-71 (6th Cir. 2005).

12       The First and Eighth Circuits found this 2002 policy

13  unlawful because it did not recognize the BOP's discretion to

14  transfer an inmate to a CCC at any time, and therefore contrary

15  to the plain meaning of Section 3621.  *See Elwood v. Jeter,* 386

16  F.3d 842 (8th Cir.2004); *Goldings v. Winn,* 383 F.3d 17 (1st

17  Cir.2004).  The rationale of these decisions was that the time

18  constraints of Section 3624(c) limited only the affirmative

19  obligation of the BOP, not the agency's discretion to place a

20  prisoner in a CCC for a longer period of time.

21       In response to decisions such as *Elwood* and *Goldings,* on

22  August 18, 2004, the BOP proposed new regulations "announcing its

23  categorical exercise of discretion for designating inmates to

24  community confinement when serving terms of imprisonment."  69

25  Fed.Reg. 51, 213 (Aug. 18, 2004).  While acknowledging the BOP's

26  general discretion to place an inmate at a CCC at any time, the

27  2005 regulations limit CCC placement to the lesser of 10 percent

28  of a prisoner's total sentence or six months, unless special

**5**

1  statutory circumstances apply. *Id.*  The final rules were

2  published on January 10, 2005, and became effective on February

3  14, 2005.

4      The final CCC designation regulations read:

5      § 570.20 What is the purpose of this subpart?

6      (a) This subpart provides the Bureau of Prisons'

7      (Bureau) *categorical exercise of discretion for*

8      *designating inmates to community confinement.* The

9      Bureau designates inmates to community confinement only

10      as part of pre-release custody and programming which

11      will afford the prisoner a reasonable opportunity to

12      adjust to and prepare for re-entry into the community.

13      (b) As discussed in this subpart, the term "community

14      confinement" includes Community Corrections Centers

15      (CCC) (also known as "halfway houses") and home confinement.

16      § 570.21 When will the Bureau designate inmates to

17      community confinement?

18      (a) The Bureau will designate inmates to community

19      confinement only as part of pre-release custody and

20      programming, *during the last ten percent of the prison*

21      *sentence being served, not to exceed six months.*

22      (b) We may exceed these time-frames *only* when specific

23      Bureau programs allow greater periods of community

24      confinement, as provided by separate statutory

25      authority for example, residential substance abuse

26      treatment program (18 U.S.C. 3621(e)(2)(A)), or shock

27      incarceration program (18 U.S.C. 4046(c)).

28  *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 240-41 (3rd

**6**

1 | Cir. 2005).

2 | **IV. LEGAL STANDARD**

3 | When Congress expressly delegates regulatory authority to an
4 | agency, any ensuing regulation is binding in the courts unless
5 | procedurally defective, arbitrary and capricious in substance, or
6 | manifestly contrary to the statute. *Zurich American Ins. Co. v.*
7 | *Whittier Properties, Inc.*, 356 F.3d 1132, 1137 n. 25 (9th Cir.
8 | 2004) (*citing United States v. Mead Corp.*, 533 U.S. 218, 227
9 | (2001)).

10 | **V.   ANALYSIS**

11 | Respondent argues that Horn's suit should be dismissed
12 | because he has not exhausted his administrative remedies.  Doc.
13 | 11, Resp., 4-6.  "In the ordinary course of business, indexes of
14 | all administrative appeals filed by inmates are maintained by the
15 | BOP SENTRY computerized system of records.  A review of the
16 | records indicated [Horn] has not filed any administrative
17 | remedies with the Bureau of Prisons on any issue."  Id., 5.

18 | The Ninth Circuit requires as a prudential matter that
19 | habeas petitioners exhaust available judicial and administrative
20 | remedies before seeking relief under Section 2241.  *Huang v.*
21 | *Ashcroft*, 390 F.3d 1118, 1123 (9th Cir. 2004).

22 | Futility is an exception to the exhaustion requirement.
23 | *Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004).  Horn
24 | argues pursuit of administrative remedies would be futile.
25 | Respondent claims that giving Horn only forty-three days in a CCC
26 | is a correct application of the regulations; Horn disputes only
27 | the regulations' validity.  *See Laing*, 370 F.3d at 1001;
28 | *Woodsall*, 432 F.3d at 238-39 n.2 (3rd Cir. 2005).  Respondent

**7**

1  refuses to consider any early release, except that which it has

2  provided under its interpretation of the statute.  Horn's

3  exhaustion of his administrative remedies is not a pre-requisite

4  to the district court's jurisdiction over the case, as the BOP

5  has an intractable and immutable policy against the relief

6  sought.

7       Respondent argues that Horn has no protected liberty

8  interest in selecting his place of confinement or in a guaranteed

9  CCC pre-release placement.  Doc. 11, Resp., 6.  Respondent claims

10  that "the gravamen [*sic*] of Petitioner's argument is that because

11  the sentencing court recommended he receive the 'full benefit' of

12  BOP's pre-release program the BOP must release him to a CCC for

13  six whole months, as part of his reintegration into society."

14  Id., 6.

15       Horn does not argue that he has a liberty interest in

16  selecting his place of confinement or in a guaranteed CCC pre-

17  release placement, but rather that the regulations which prevent

18  the BOP from considering whether to place him in a CCC until

19  after he has served nine-tenths of his sentence violate Title 18,

20  Section 3621(b), of the United States Code.  He seeks an order

21  requiring the BOP to consider in good faith the appropriateness

22  of transferring him to a CCC in light of the factors set forth in

23  Section 3621(b) without reference to those regulations.  Doc. 1,

24  Pet., 5-6.

25       Respondent argues that the BOP has already exercised its

26  discretion by basing its CCC recommendation on an assessment of

27  Horn's personal needs.  Doc. 11, Resp., 8-9.  However, the BOP's

28  recommendation that Horn receive forty-seven days in CCC, limited

**8**

1  to forty-three days based on space availability, was based on

2  regulations that limit the possible amount of time that Horn may

3  spend in a CCC to the last tenth of his sentence.   Horn argues

4  this regulation is itself invalid because it limits the BOP's

5  discretion in a way not consistent with Section 3621.

6      As in *Woodall*, the issue is whether the new regulations are

7  contrary to, or a permissible construction of, Section 3621.  *See*

8  *Woodall*, 432 F.3d at 241.

9  Categorical Exercise of Discretion under *United States v. Lopez*

10      Respondent argues that the February 2005 regulations are a

11  permissible construction of the relevant CCC statutes.   Doc. 11,

12  Resp., 9.   Respondent argues, first, that the regulation is a

13  categorical exercise of administrative discretion of the kind

14  upheld by the Supreme Court in *United States v. Lopez*, 531 U.S.

15  230, 243-44 (2001).   Doc. 11, Resp., 11-13.

16      In *Lopez*, the Supreme Court addressed the BOP's categorical

17  exercise of discretion under Title 18, Section 3621(e)(2)(b), of

18  the United States Code, which stated that an inmate convicted of

19  a non-violent offense could have his or her period of

20  incarceration reduced after successfully completing a drug

21  treatment program.   The BOP had issued a regulation excluding

22  inmates from early release under this provision if they were

23  convicted of non-violent crimes involving firearms.   28 C.F.R.

24  § 550.58(a)(1)(vi)(B).   The Supreme Court upheld the regulation

25  stating that nothing in the statute at issue prohibited

26  "categorical exclusions."   *Lopez*, 531 U.S. at 243.

27      *Lopez* is distinguishable from this case.   As the *Lopez* Court

28  noted, "constraints . . . requiring the BOP to make

**9**

individualized determinations based only on post-conviction conduct are nowhere to be found in [Section] 3621(e)(2)(b)." *Id.* at 241-42.  In fact, the subsection at issue in *Lopez* offers no specific criteria to be considered other than the overarching criterion that only nonviolent offenders are eligible for early release.  Accordingly, the BOP can make categorical decisions within that class of offenders without violating that subsection.

Subsection 3621(b) is different from Section 3621(e)(2)(b), as it prescribes criteria the BOP must consider in making placement determinations:

> The Bureau shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence -
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> (B) recommending a type of penal or correctional facility as appropriate; and

**10**

1   (5) any pertinent policy statement issued by the
2   Sentencing Commission pursuant to section 994(a)(2) of
3   title 28.
4   In designating the place of imprisonment or making
5   transfers under this subsection, there shall be no
6   favoritism given to prisoners of high social or
7   economic status. The Bureau may at any time, having
8   regard for the same matters, direct the transfer of a
9   prisoner from one penal or correctional facility to
10  another. The Bureau shall make available appropriate
11  substance abuse treatment for each prisoner the Bureau
12  determines has a treatable condition of substance
13  addiction or abuse.
14  18 U.S.C. § 3621(b).

15  Three of these factors – the nature and circumstances of the
16  offense, the history and characteristics of the prisoner, and any
17  statement by the court that imposed the sentence – cannot be
18  fully considered without evaluating inmates on a case-by-case
19  basis.  Accordingly, *Lopez,* which dealt with a subsection void of
20  any individual criteria, is not controlling.

21  In invalidating the February 2005 regulation, the *Woodall*
22  court stated:

23  The regulations do not allow the BOP to consider the
24  nature and circumstances of an inmate's offense, his or
25  her history and pertinent characteristics, or most
26  importantly, any statement by the sentencing court
27  concerning a placement recommendation and the purposes
28  for the sentence.  And yet, according to the text and

**11**

1  history of Section 3621, these factors must be taken

2  into account.  The regulations are invalid because the

3  BOP may not categorically remove its ability to

4  consider the explicit factors set forth by Congress in

5  Section 3621(b) for making placement and transfer

6  determinations.

7  *Woodall,* 432 F.3d at 244; *see Fults v. Sanders*, — F.3d —, 2006 WL

8  870745, *2-3 (8th Cir. 2006).

9  <u>Administrative Agency Deference</u>

10      Respondent argues that since the BOP is the agency

11  responsible for administering 18 U.S.C. § 3621, the BOP's

12  interpretation of that statute is entitled to deference.  Doc.

13  11, Resp., 13-14.

14      When reviewing an agency's construction of a statute it is

15  charged with administering, a court looks first to the statutory

16  text to see whether Congress has spoken directly to the issue.

17  If the intent of Congress is clear, that is the end of the

18  matter; for the court, as well as the agency, must give effect to

19  the unambiguously expressed intent of Congress.  If, however, the

20  statute is silent or ambiguous with respect to the specific

21  issue, the question for the court is whether the agency's answer

22  is based on a permissible construction of the statute.  If so,

23  the court defers to the agency's interpretation.  Throughout this

24  inquiry, considerable weight is given to an executive

25  department's construction of a statutory scheme it is entrusted

26  to consider and deference is afforded to the agency's

27  administrative interpretations.  *Contract Management, Inc. v.*

28  *Rumsfeld*, 434 F.3d 1145, 1146-47 & n.2 (9th Cir. 2006) (*citing*

**12**

1   *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467
2   U.S. 837, 842-43, 844 (1984)).

3       Congress's intent in promulgating Section 3621 was to assure
4   that pre-release conditions of confinement be used to facilitate
5   a prisoner's re-entry to the community.  This purpose is not
6   ambiguous.

7       The intent of Congress is clear as to consideration of
8   factors for grounds for placement.  "Even for an agency able to
9   claim all the authority possible under *Chevron,* deference to its
10  statutory interpretation is called for only when the devices of
11  judicial construction have been tried and found to yield no clear
12  sense of congressional intent."  *Gen. Dynamics Land Sys. v.*
13  *Cline,* 540 U.S. 581, 600 (2004).  Section 3621(b) provides
14  unequivocally that the BOP must consider several factors in CCC
15  placement to effectuate the transition.  18 U.S.C. § 3621(b).
16  The BOP regulation, however, provides that the BOP may not
17  consider those factors in full.  28 C.F.R. § 570.20-21.  The
18  conflict between the regulations and the statute is unavoidable.
19  *See Woodall*, 432 F.3d at 248-49.

20  <u>Construction with Section 3624(c)</u>

21      Respondent argues that "the more specific language of [Title
22  18, Section 3624(c), of the United States Code] operates as an
23  express limitation on [Section] 3621(b)'s broad grant of general
24  authority[,]" and that "[t]o hold otherwise would vitiate a
25  fundamental principle of statutory construction."  Doc. 11,
26  Resp., 14 (citing *Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996)
27  (specific statutory provision governs more general)).

28      Section 3624(c) provides:

**13**

1    The [BOP] shall, to the extent practicable, assure that

2    a prisoner serving a term of imprisonment spends a

3    reasonable part, not to exceed six months, of the last

4    10 per centum of the term to be served under conditions

5    that will afford the prisoner a reasonable opportunity

6    to adjust to and prepare for the prisoner's re-entry

7    into the community.  The authority provided by this

8    subsection may be used to place a prisoner in home

9    confinement.

10  18 U.S.C. § 3624(c).

11      This argument was rejected in *Goldings v. Winn*, 383 F.3d 17,

12  21-25 (1st Cir. 2004), *Elwood v. Jeter*, 386 F.3d 842, 845-47 (8th

13  Cir. 2004), and *Woodall*, 432 F.3d at 250:

14    [Section] 3624 does not determine when the BOP should

15    consider CCC placement, but when it must provide it.

16    The clear language of [Section] 3624(c) mandates that

17    the BOP "shall" assure that a prisoner is given

18    appropriate pre-release conditions that are focused on

19    re-entry, if "practicable."  The statute requires the

20    BOP not just to consider, but to actually place an

21    inmate in a CCC or like facility, during the last ten

22    percent or six months of the sentence, when that is

23    possible.

24  *Woodall*, 432 F.3d at 250.  There is no time limit when the BOP

25  may consider a pre-release change of confinement.  However, the

26  BOP must consider such status and is not free to re-write

27  Congress's prescription of the factors to be considered in making

28  the determination.  While Section 3624(c) limits the BOP's

**14**

1    discretion not to consider community confinement or other pre-

2    release alternatives at the end of a prisoner's term, it does not

3    prohibit the BOP from doing so earlier pursuant to a different

4    grant of discretionary authority. *Goldings*, 383 F.3d at 24.

5    This is has failed to do by an arbitrary application of a ten-

6    percent maximum for pre-release alternative confinement.

7    **VI.   CONCLUSION**

8    For the foregoing reasons, the BOP shall show cause why the

9    writ should not be granted with its return to the OSC to be filed

10    within three (3) days of the date of service of this order, not

11    to exceed twenty (20) days, if extension is requested for good

12    cause.

13    FURTHER ORDERED that the BOP shall immediately and in good

14    faith determine whether Petitioner should be transferred to a CCC

15    for more than forty-three days in completion of his prison

16    sentence.  In making this decision, the BOP shall consider the

17    sentencing judge's recommendation and all other Section 3621

18    factors, as well as any other appropriate factors the BOP, in its

19    discretion, finds applicable.  This determination shall be made

20    without reference to the BOP's 2002 and 2005 policies, including

21    28 C.F.R. § 570.20-.21.  The BOP's determination shall be filed

22    with the court within fourteen days following date of service of

23    this order.

24

25

26

27

28

1   SO ORDERED

2   DATED: April 21, 2006.

3

4

5                                    /s/ Oliver W. Wanger
                                       OLIVER W. WANGER
6                                 United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16